IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 1:15-cr-339 |
| ) | |
| DAVID STELMACHOWSKI, ) | Hon. Charles R. Norgle |
| ) | |
| Defendant. ) | |

## OPINION

Defendant David Stelmachowski ("Defendant") was originally indicted in January 2015, on charges of, *inter alia*, misleading and defrauding regulators in an attempt to obtain prescription drugs without a valid prescription. On May 24, 2018, a Second Superseding Indictment was issued against Defendant. Defendant now moves, pursuant to Federal Rules of Criminal Procedure 7, 8, and 12; the Due Process and Effective Assistance of Counsel Clauses of the Fifth and Sixth Amendments to the Constitution of the United States, to dismiss Count 1 of the Indictment or, in the alternative, order a Bill of Particulars, and require the Government to strike surplusage from the Indictment. For the following reasons, Defendant's motion is denied.

## BACKGROUND

Because the Court's February 12, 2018 Memorandum Opinion and Order, discussed the facts and circumstance of this case at length, the Court only repeats what is necessary for the instant motion.

On January 2015, on charges of, *inter alia*, misleading and defrauding regulators in an attempt to obtain prescription drugs without a valid prescription. A Superseding Indictment was handed down on November 16, 2017, and a Jury Trial was set for May 8, 2018. However, the May trial date was stricken, and the Second Superseding Indictment ("Indictment") was handed

down on May 24, 2018.

Count 1 of the Indictment charges Defendant and his co-defendant, Dr. Mikaitis, with a conspiracy to dispense Oxycodone, OxyContin, and Amphetamine Salt Combo ("Adderall") without a valid prescription in violation of the Federal Food, Drug, and Cosmetic Act ("FDCA"), as codified at 21 U.S.C. § 301, *et seq.*, and conspiracy to defraud the United States. The Indictment alleges that over a three-year period Dr. Mikaitis issued in excess of 620 fraudulent prescriptions to Defendant and Individual A, an unnamed individual, for Oxycodone, OxyContin, and Adderall. The indictment further alleges that Defendant filled these fraudulently obtained prescriptions for approximately 37,000 pills and did so at over eighty Chicagoland pharmacies to avoid detection.

## ANALYSIS

Defendant argues that Count 1 of the Indictment charges two distinct conspiracies, in violation of Rule 8(a). Rule 8 permits the Government to charge a defendant with multiple separate counts "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a).

**Standards of Decision**

A motion under Rule 12 tests the sufficiency of the indictment. Fed. R. Crim. P. 12(b)(3); see also United States v. Shorter, 874 F.3d 969, 974 (7th Cir. 2017) (requiring a defendant to raise a motion to dismiss the indictment in the first instance.). Rule 7 requires "[t]he indictment or information []be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). "'An indictment is sufficient so long as it: "(1) states the elements of the offense charged; (2) fairly informs the defendant of the nature of the charge so that he may prepare a defense; and (3) enables him to

plead an acquittal or conviction as a bar against future prosecutions for the same offense.'" United States v. Miller, 883 F.3d 998, 1002 (7th Cir. 2018) (quoting United States v. McLeczynsky, 296 F.3d 634, 636 (7th Cir. 2002)). "'The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.'" United States v. Vaughn, 722 F.3d 918, 925 (7th Cir. 2013) (quoting United States v. Hausmann, 345 F.3d 952, 955 (7th Cir.2003)).

"To prove a drug-distribution conspiracy, "the government must prove that (1) two or more people agreed to commit an unlawful act, and (2) the defendant knowingly and intentionally joined in the agreement." United States v. Maldonado, 893 F.3d 480, 484 (7th Cir. 2018) (citing United States v. Johnson, 592 F.3d 749, 754 (7th Cir. 2010)); see United States v. Briscoe, 896 F.2d 1476, 1505 (7th Cir. 1990) ("Various people knowingly joining together in furtherance of a common design or purpose constitute a single conspiracy.") (quoting United States v. Varelli, 407 F.2d 735, 742 (7th Cir.1969)). "A conspiracy is not the commission of the crime which it contemplates, and neither violates nor 'arises under' the statute whose violation is its object.... The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute." United States v. Vallone, 698 F.3d 416, 461 (7th Cir. 2012), cert. granted, judgment vacated sub nom. Dunn v. United States, 570 U.S. 901 (2013), and opinion modified and reinstated, 752 F.3d 690 (7th Cir. 2014) (quoting Braverman v. United States, 317 U.S. 49, 54 (1942)). "[A] charge alleging a conspiracy with two illicit objectives was not duplicitous. Id. at 461. However, the Seventh Circuit has recognized, "when several different crimes are the object of a single conspiracy, a jury possibly could find a defendant guilty of conspiracy even though the jurors do not agree on which crime was the object of the conspiracy." United States v. Hughes, 310 F.3d 557, 561 (7th Cir. 2002).

3

**Motion to Dismiss Count 1 of the Second Superseding Indictment**

Defendant argues that Count 1 of the Indictment charges two distinct conspiracies because, in his view, "[Defendant] obtained prescriptions from Dr. Mikaitis, filled them, and otherwise carried out the acts necessary to misbrand prescription drugs. Separate and apart from [Defendant], Indivdual [sic] A did the same acts in tandem with Dr. Mikaitis. There was not one common purpose alleged, not one general agreement alleged, but two." Def.'s Consolidated Mot. to Dismiss Count One of the Second Superseding Indictment; or Alternatively, for a Bill of Particulars; and to Strike, p. 9. The Court disagrees with Defendant's position.

The Seventh Circuit has oft held that "the jury gets the 'first crack' at deciding whether there existed one conspiracy or many[.]" United States v. Wilson, 134 F.3d 855, 865 (7th Cir. 1998) (citing United States v. Bullies, 77 F. 3d 1553, 1560 (7th Cir. 1996)); see Briscoe, 896 F.2d at 1505 ("[T]he government may establish that a defendant knowingly became a member of a single narcotics conspiracy if each [co-conspirator] knew, or had reason to know, that other [individuals] were involved [in the scheme].") (internal citation and quotations omitted). Moreover, "a defendant's challenge that the evidence showed multiple conspiracies rather than a single conspiracy [is] a challenge to the sufficiency of the evidence." United States v. Bullis, 77 F.3d 1553, 1560 (7th Cir. 1996).

Count 1 of the Indictment charges Defendant, Dr. Mikaitis, and Individual A with conspiring together to dispense Oxycodone, OxyContin, and Adderall. Count 1 lists hundreds of instances where Defendant filled prescriptions from Dr. Mikaitis at scores of pharmacies. Whether the evidence is sufficient to secure a conviction is a question for the jury but, the Government has met its obligations under Rules 7 and 8.

**Demand for a Bill of Particulars**

Next, Defendant demands a Bill of Particulars requiring the government to "identify the government agency, agencies, or other entity or individuals that were the object of the conspiracy charged in count one[.]" and "describe the nature and means through which both [Defendant] and Individual A entered into a single, joint conspiracy with Dr. Mikaitis." Def.'s Consolidated Mot. to Dismiss Count One of the Second Superseding Indictment; or Alternatively, for a Bill of Particulars; and to Strike, pp. 9-13.

The Government has no objection to Defendant's first request—the agency, agencies, or other entity or individuals conspired against—and provides various agencies in its response. In his Reply, Defendant request that the government formalize its repose in a proper Bill of Particulars. Accordingly, the Government shall memorialize a response in a formal Bill of Particulars. Defendant's second request—the nature and means through which a conspiracy was entered—is opposed.

"The test for determining whether a bill of particulars should have been granted is similar to the test for determining the general sufficiency of the indictment, as discussed above: that is, 'whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial.'" United States v. Fassnacht, 332 F.3d 440, 446 (7th Cir. 2003) (quoting United States v. Kendall, 665 F.2d 126, 134 (7th Cir. 1981)); Vaughn, 722 F.3d at 927. "[A] defendant is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case." United States v. Kendall, 665 F.2d 126, 135 (7th Cir. 1981).

Here, the Indictment indicates the individuals joined together to commit the unlawful act, specifically, Individual A and Dr. Mikaitis worked together to illegally dispense Oxycodone,

5

OxyContin, and Adderall; and that the Defendant knowingly colluded with the co-conspirators to achieve these ends. But, Defendant avers that because the Indictment does not allege an overt act to show a conspiracy between the three co-defendants, a Bill of Particulars is appropriate. This request however, smacks of an evidentiary probe.

The Seventh Circuit has long held that a Bill of Particulars is inappropriate if the information sought is available through an alternative means, i.e. discovery. Vaughn, 722 F.3d at 927. While the Court recognizes it is vital that a defendant be adequately informed about the charges against him, a Bill of Particulars should not be ordered if the information is available through discovery. While neither Defendant nor the Government has indicated that significant discovery has taken place, the original indictment was returned on December 3, 2015, and the case nearly proceeded to trial in May 2018—significant discovery must have occurred. Accordingly, the Court finds that it is inappropriate to order a Bill of Particulars requiring the Government to disclose the nature and means through which a conspiracy was entered.

**Motion to Strike Surplusage**

Lastly, Defendant moves to strike surplusage from the Indictment, arguing that "to the extent the government does not seek to prove that the [Food and Drug Administration], [Illinois Department of Financial and Professional Responsibility], or the [Drug Enforcement Agency] were the object of the [D]efendant's alleged deception, then the various references to those agencies in [C]ount one is irrelevant, prejudicial, and should be stricken." Def.'s Consolidated Mot. to Dismiss Count One of the Second Superseding Indictment; or Alternatively, for a Bill of Particulars; and to Strike, p. 13. Defendant also moves to strike all reference to Individual A and any reference to a lack of physical examination, medical tests, or monitoring. Id. at p. 14.

"Upon the defendant's motion, the court may strike surplusage from the indictment or

6

information." Fed. R. Crim. P. 7(d). "Surplusage should not be stricken unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." United States v. Peters, 435 F.3d 746, 753 (7th Cir. 2006) (internal citations and quotations omitted).

The suggestion that references to the Food and Drug Administration, Illinois Department of Financial and Professional Responsibility, or the Drug Enforcement Agency should be stricken is without merit. It is the Government's position that Defendant, working in concert with the co-defendants, sought to defraud and mislead the above named agencies in an effort to illegally dispense Oxycodone, OxyContin, and Adderall. The language concerning the agencies is material to the indictment because it outlines those agencies' duties and responsibilities and Defendant's efforts to evade their enforcement efforts.

Similarly, the motion to strike any reference to physical examinations, medical testing, or medical monitoring is baseless. The Federal Food, Drug, and Cosmetic Act explicitly prohibits the distribution of the above drugs "except under the supervision of a practitioner licensed by law to administer such drug." 21 U.S.C. § 353(b)(1)(A). Allegations that the prescriptions were made without physical examinations, medical testing, or medical monitoring goes to the heart of the charged conduct.

Finally, the numerous references to Individual A are necessary to allege a conspiracy between Defendant, Dr. Mikaitis, and Individual A. Obviously refences to Individual A are material to allegations that Defendant conspired with Individual A.

## CONCLUSION

Defendant's motion to dismiss Count 1 of the Indictment as duplicative is denied because the Government has met its burden under Rules 7 and 8, and the jury is responsible for deciding whether the evidence is sufficient to allege a single conspiracy. Defendant's motion for a Bill of Particulars is granted as to the agency, agencies, or other entity or individuals Defendant conspired against and denied as to the nature and means through which a conspiracy was entered. The Government shall memorialize a response in a formal Bill of Particulars on or before Tuesday, August 28, 2018. Lastly, Defendant's motion to strike surplusage is denied because none of the allegations or information contained within the Indictment is irrelevant, inflammatory, or prejudicial.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: August 21, 2018